### *In re* KOEHLER ESTATE

Docket Nos. 322996 and 322997. Submitted November 9, 2015, at Detroit. Decided March 24, 2016, at 9:00 a.m. Application for leave to appeal dismissed on stipulation 500 Mich 967.

Ernest Umble (Ernest) intervened in the Oakland County Probate Court in intestate proceedings involving the estate of Kenneth Koehler (Kenneth). Ernest was Kenneth's paternal uncle. Whether Ernest could inherit a share of Kenneth's estate turned on whether Kenneth's grandfather, Carl Cedrick Umble (Carl Cedrick), could have inherited from his son—Kenneth's father, Carl Koehler (Carl). Carl was the posthumous child of Carl Cedrick and Florence Koehlor (Florence). Carl Cedrick and Florence were unmarried. Carl Cedrick was killed in an altercation with Clyde Shadwick regarding Florence before Carl was born. The personal representative of Kenneth's estate, Sherry Bierkle (Bierkle), one of Kenneth's maternal relatives, moved for summary disposition, asserting that Ernest was precluded from inheriting under MCL 700.2114(4), which precludes inheritance through a child unless the parent has acknowledged the child and has not refused to support the child. The court, Kathleen A. Ryan, J., held an evidentiary hearing and determined that Carl Cedrick was Ernest's father, making him Carl's half-brother and Kenneth's uncle, and established him as Kenneth's only surviving paternal relative. The court decided that MCL 700.2114(4) did not apply to cases involving posthumous children and concluded that Ernest was entitled to half of Kenneth's estate. Bierkle appealed by delayed leave granted.

The Court of Appeals *held*:

1. The party asserting paternity has the burden of proving by a preponderance of the evidence that a man is the natural father of a child. In this case, a preponderance of the evidence showed that Carl Cedrick was Carl's father. Ernest produced Carl's birth certificate, which listed Carl Cedrick Umble as Carl's father. A newspaper article established that Carl Cedrick was killed in a fight prompted by his affection for Florence Koehler, Carl's mother. Ernest produced a death certificate indicating that Carl Cedrick's mother was Grace Umble, and Carl's obituary indicated

his grandmother was Grace Roberts. Finally, Ernest introduced Carl's marriage license on which Carl's father was listed as Carl Cedrick. Ernest's birth certificate indicated that his father was Carl Cedrick. The trial court's determination that Carl Cedrick was the father of both Carl and Ernest was well supported by the evidence presented.

2. The Legislature did not intend MCL 700.2114(4) to apply to a parent's right to inherit from or through his or her posthumous child. MCL 700.2114 overrides the common-law rule that denied children born out of wedlock the right to inherit from their biological fathers. The statute declares that an individual is the child of his or her natural parents regardless of the parents' marital status with three exceptions: adoption, termination of parental rights, and cases in which the natural father fails to openly acknowledge the child as his own and refuses to support the child. Because the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, expressly allows a party to establish paternity for inheritance purposes even when the natural father's death preceded a child's birth, it is unlikely that EPIC would also have created an almost insurmountable hurdle for a posthumous child's paternal relatives to inherit through the child. Requiring proof that a father who predeceased the birth of his child openly acknowledged the child as his own and did not refuse to support the child would present the proponent of the inheritance with a virtually impossible burden of proof. The probate court properly ruled that MCL 700.2114(4) did not apply to posthumous children and properly denied Bierkle's motion for summary disposition. The probate court correctly concluded that Ernest, as Kenneth's only surviving paternal relative, was entitled to half of Kenneth's estate.

Affirmed.

O'CONNELL, J., dissenting, would have reversed the probate court's ruling that MCL 700.2114(4) did not apply to cases in which a father predeceased his child. The case should have been remanded for further proceedings to determine whether Carl Cedrick satisfied the conditions under which a father may inherit from his son. Nothing in the provisions of EPIC indicates that MCL 700.2114 was not intended to apply to parents who predecease their children. Although satisfying the burden of proof required by MCL 700.2114(4) would be difficult, it was not impossible to gather evidence, if it existed, that Carl Cedrick openly acknowledged Carl as his son and that Carl Cedrick did not refuse to support Carl.

ESTATES AND PROTECTED INDIVIDUALS CODE (EPIC) — INTESTATE PROCEEDINGS —
PARENTS' RIGHT TO INHERIT — POSTHUMOUS CHILD.

Under MCL 700.2114(4), inheritance from or through a child by
either natural parent or his or her kindred is precluded unless
that natural parent has openly treated the child as his or hers
and has not refused to support the child; this subsection does not
apply with regard to a posthumous child born outside of mar-
riage.

*Butzel Long* (by *Mark T. Nelson* and *Amy Glenn*) for
Sherry Bierkle.

*Kemp Klein Law Firm* (by *Richard Bisio* and *Joseph
P. Buttiglieri*) for Ernest Umble.

Before: SHAPIRO, P.J., and O'CONNELL and GLEICHER,
JJ.

GLEICHER, J. The law of intestate succession flows
from parent-child relationships. What happens when
an unmarried father dies before his child is born and
no evidence exists that he would have willingly sup-
ported his child or openly acknowledged the child as
his own? Does nature or nurture establish the familial
link for inheritance purposes? We confront these ques-
tions here.

Our story begins in Colorado in 1931, with a fatal
affray over a woman's affections. Soon after, the
woman delivered a child. That child (who grew into a
man and had a child of his own) is the linchpin to
establishing the paternal line in this inheritance dis-
pute.

The probate court determined that the murdered
Coloradan, Carl Cedrick Umble, was the grandfather
of the intestate deceased in this case, Kenneth Koehler.
Kenneth Koehler's maternal relatives contend that
Carl Cedrick Umble's sudden and inopportune exit

from this earth triggered MCL 700.2114(4), which severs the intestate inheritance rights of parents who have refused to financially support and openly acknowledge a child. In other words, MCL 700.2114(4) punishes parents who desert and ignore their progeny by denying those parents the right to inherit from their dead child's estate. According to the maternal relatives, Carl Cedrick Umble was such a parent.

The probate court rejected this argument, finding that applying MCL 700.2114(4) in this situation would render "meaningless" other sections of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, that afford inheritance rights to posthumously born children. Further, the court declared, the maternal relatives had not met their summary disposition burden, as they presented no evidence that Carl Cedrick Umble had rejected his in utero child. We agree with the probate court and affirm.

I

The deceased, Kenneth Koehler, left no will. He had no spouse, no children, and no siblings. His parents predeceased him, as did his grandparents. Under EPIC, half of Kenneth's intestate estate passes to the descendants of his paternal grandparents, and half to his maternal relatives. MCL 700.2103(d).

Kenneth Koehler's paternal pedigree is the focal point of this case. We begin with the details gleaned largely from various public and historical records.

Kenneth's father was a man named Carl Koehler. Carl Koehler was raised by a single mother, Florence Koehler. Florence never married Carl Koehler's father, Carl Cedrick Umble. The tragic and somewhat lurid story (even by today's standards) of Florence Koehler

and Carl Cedrick Umble has been pieced together
through old Colorado newspaper articles and legal
documents.

It appears that Carl Cedrick Umble led a short but
passionate life punctuated by the conception of two
illegitimate children (Carl Koehler and Ernest Umble),
a vicious street fight over a woman (Florence Koehler),
and death by stabbing at age 20, three months before
Carl Koehler's 1931 birth. The first of Carl Cedrick
Umble's love children was Ernest Umble, who was
conceived during Carl Cedrick Umble's youthful liai-
son with Lyndall Adeline Hackett (Lydia). Carl Cedrick
and Lydia married a year after Ernest's 1929 birth,
rendering Ernest a marital child under current Colo-
rado law. See Colo Rev Stat 19-4-105(1)(c).

Carl Cedrick Umble and Lydia Hackett Umble later
separated, and Carl Cedrick began courting Florence
Koehler. According to a newspaper account, Florence
and Carl Cedrick quarreled. Although he "failed to
revive the girl's affection for him," Carl Cedrick report-
edly "threatened violence" to anyone who dated Flor-
ence. One Clyde Shadwick ignored this warning. When
Carl Cedrick attempted to kiss Florence, Shadwick
approached the pair and was "knocked down by a blow
of Umble's fist[.]" Shadwick then stabbed Carl Cedrick
Umble, allegedly in self-defense.

Carl Cedrick Umble's second son, Carl Koehler, was
born three months later. In probate parlance, Carl
Koehler was a "posthumous child." A posthumous child
is "[a] child born after a parent's death." *Black's Law
Dictionary* (10th ed), p 291.[1]

---

[1] The dissent uses the term "afterborn child." Technically, the terms
"posthumous child" and "afterborn child" have different meanings.
*Black's Law Dictionary* (10th ed), p 290, defines an "afterborn child" as
"[a] child born after execution of a will or after the time in which a class

Florence never had any other children. When she died in 1946, Carl was only 15 years old. Four years later, Carl married Anna York. The marriage produced Kenneth Koehler and no other children. Carl died when Kenneth was eight years old. Kenneth died at the age of 59, and left no will distributing his $500,000 estate. For those readers who find themselves lost in Kenneth's patrilineal tree, we include this visual aid:

Sherry Bierkle is Kenneth's first cousin on his mother's side. She successfully petitioned the probate court to be named the personal representative of Kenneth's estate. Approximately 17 months later, Bierkle filed a final accounting and a proposed settlement distributing the estate among Kenneth's maternal relatives. Ernest Umble intervened. Ernest contended that as Kenneth's uncle and sole surviving paternal relative, half of Kenneth's estate belongs to him. The maternal relatives challenged Ernest's claim of kinship, focusing on the paternity of Carl Koehler, Kenneth's father.

Ernest asserted that Kenneth's grandfather was his own father, Carl Cedrick Umble. Bierkle took issue

gift closes." Historically, Michigan caselaw used the term "afterborn child" in that manner. See, e.g., *Hankey v French*, 281 Mich 454; 275 NW 206 (1937). EPIC uses the term "[a]fterborn heirs" to refer to children "in gestation at a particular time," which encompasses both common-law concepts. MCL 700.2108.

with Ernest Umble's claim and filed a motion for summary disposition under MCR 2.116(C)(8). She insisted that Ernest was barred from inheriting by MCL 700.2114(4), which precludes a natural parent from inheritance from or through a child when the natural parent fails to "openly treat[] the child as his or hers," and "has . . . refused to support the child."

The probate court conducted an evidentiary hearing. Assembling the biological strands of Kenneth Koehler's paternal line presented a challenge worthy of an expert archivist. Ernest presented Carl Koehler's Colorado birth certificate and a Denver, Colorado, newspaper article describing the circumstances of Carl Cedrick Umble's demise. The parties also submitted various marriage, birth, and death certificates for the involved individuals, including Ernest's certificate of live birth indicating that his father was Carl Umble.

The probate court determined that Carl Koehler's father was Carl Cedrick Umble. This finding means that Ernest Umble and Carl Koehler were half-brothers, and that Ernest Umble was the uncle of our deceased, Kenneth Koehler. As Ernest Umble was the only surviving relative on Kenneth's paternal side, the court ruled that he would take half of the estate. The probate court rejected Bierkle's assertion that MCL 700.2114(4) barred Ernest's claim. The court also rebuffed Bierkle's legal argument that Carl Koehler's paternity was not properly established under Michigan law.

Bierkle appeals.

II

Bierkle asserts that the probate court clearly erred when it found that Carl Cedrick Umble was the natural father of Carl Koehler. We review the probate

court's factual findings for clear error. *In re Townsend Conservatorship*, 293 Mich App 182, 186; 809 NW2d 424 (2011). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* (quotation marks and citation omitted). We consider issues of statutory interpretation de novo. *Id.*

Whether Carl Cedrick Umble was Carl Koehler's father for purposes of EPIC is important, because establishing a parent-child relationship is the first step toward determining whether Ernest Umble can inherit as a paternal descendant. If Carl Cedrick Umble was entitled to inherit from his child, Carl Koehler, Ernest Umble inherits as the only surviving descendant of Koehler's paternal grandparents. Otherwise, Bierkle and the other maternal descendants inherit Kenneth's entire estate.

Article II, part 1 of EPIC governs rights to intestate inheritance. *In re Certified Question*, 493 Mich 70, 76-77; 825 NW2d 566 (2012). EPIC helpfully supplies the basic definitions needed to understand its pertinent provisions. The term "descendant" is used "in relation to an individual," and includes "all of his or her descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this act." MCL 700.1103(k). EPIC defines a "parent" as "an individual entitled to take, or who would be entitled to take, as a parent under this act by intestate succession from a child who dies without a will and whose relationship is in question." MCL 700.1106(i).

If a decedent dies intestate and has no surviving spouse, EPIC provides the order in which the decedent's estate passes to his or her surviving relatives.

MCL 700.2103. First, the estate passes to the decedent's descendants. MCL 700.2103(a). If the decedent has no descendants, the estate passes to the decedent's surviving parent or parents. MCL 700.2103(b). If the decedent has neither descendants nor surviving parents, the estate passes to the descendants of the decedent's parents (the decedent's siblings, nieces, and nephews). MCL 700.2103(c).

If the decedent has no surviving descendants, parents, or descendants of parents, EPIC instructs the probate court to determine whether there are any descendants of the decedent's grandparents. MCL 700.2103(d). Half the decedent's estate passes to the decedent's paternal grandparents or their descendants, and the other half passes to the decedent's maternal grandparents or their descendants. *Id.* Finally, "[i]f there is no surviving grandparent or descendant of a grandparent on either the paternal or the maternal side, the entire estate passes to the decedent's relatives on the other side in the same manner as the ½." *Id.*

Accordingly, if Carl Cedrick Umble was entitled to inherit as Carl Koehler's parent, Ernest Umble is entitled to inherit half of Koehler's estate because he is the sole surviving descendant of Koehler's paternal grandparents. But if inheritance could not pass up to Carl Cedrick Umble through his relationship with Carl Koehler, it cannot pass back down to Ernest Umble, and he is not entitled to a portion of the estate.

Resolution of this case would be easy if we could simply stop here by concluding that Ernest Umble is a paternal descendant entitled to inherit under MCL 700.2103(d), which provides that half of Kenneth's intestate estate passes to the descendants of his pater-

nal grandparents. The evidence substantiates that Ernest is a descendant of Kenneth's paternal grandfather, Carl Cedrick Umble. As such, Ernest inherits. Case closed. Alas, Carl Koehler's nonmarital, posthumous birth complicates this case.

III

EPIC provides that, generally, a child is the child of his or her natural parents even if they were not married:

> Except as provided in subsections (2), (3), and (4), for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status. [MCL 700.2114(1).]

And a child is a child of his or her natural father even if the father dies before the child's birth. See *Black's Law Dictionary*, p 291 (defining the term "posthumous child"). Posthumous children enjoy a right to intestate inheritance in Michigan if they were "in gestation" at the time of the father's death and lived for 120 hours or more after birth. MCL 700.2108. The parentage of a posthumous child can be established by the probate court. MCL 700.2114(1)(b)(v). We find no fault with the manner in which the probate court determined that Carl Koehler fulfilled the statutory requirements for intestate succession as an out-of-wedlock, posthumous child, particularly given what the court had to work with.

MCL 700.2114(1)(b) sets forth circumstances in which a man is considered to be the natural parent of a child when that child is conceived out of wedlock for purposes of EPIC. In this case, the probate court proceeded under MCL 700.2114(b)(v), which provides:

> Regardless of the child's age or whether or not the alleged father has died, the court with jurisdiction over probate proceedings relating to the decedent's estate determines that the man is the child's father, using the standards and procedures established under the paternity act, . . . MCL 722.711 to 722.730.

Michigan's Paternity Act "was created as a procedural vehicle for determining the paternity of children born out of wedlock." *In re MKK*, 286 Mich App 546, 557; 781 NW2d 132 (2009) (quotation marks and citations omitted). The Paternity Act provides four ways by which a court may establish paternity by an order of filiation:

> (a) *The finding of the court or the verdict determines that the man is the father.*
>
> (b) The defendant acknowledges paternity either orally to the court or by filing with the court a written acknowledgment of paternity.
>
> (c) The defendant is served with summons and a default judgment is entered against him or her.
>
> (d) Genetic testing . . . determines that the man is the father. [MCL 722.717(1) (emphasis added).]

The party seeking to prove paternity must establish by a preponderance of the evidence that the man is the child's father. *Bowerman v MacDonald*, 431 Mich 1, 14; 427 NW2d 477 (1988).

Under MCL 722.717(1)(a), the probate court had the authority to review the totality of the evidence and to determine that Carl Cedrick Umble was Carl Koehler's father. The court observed that Carl Cedrick Umble was listed as the father on Carl Koehler's birth certificate. Moreover, the probate court specifically noted that: Carl Cedrick Umble was killed in a knife fight over Florence Koehler, Carl Koehler's mother; a newspaper article and death certificate indicated that Carl

Cedrick Umble's mother was Grace Umble, and Carl Koehler's obituary listed his grandmother as Grace Roberts of Denver, Colorado; and Carl Koehler's marriage certificate listed his father as "Carl Sedric [sic] Umble." Taken together, this evidence preponderates in favor of Carl Cedrick Umble and Carl Koehler's father-child relationship. Accordingly, we find this portion of the probate court's ruling well-supported, both factually and legally.

IV

According to Bierkle, MCL 700.2114(4) forecloses Ernest Umble's inheritance rights, even assuming that Carl Cedrick Umble fathered Carl Koehler. As we have mentioned, the statute denies intestate inheritance to parents who fail to nurture a child in two critically important ways: by financially abandoning the child and by denying parenthood. See *In re Turpening Estate*, 258 Mich App 464; 671 NW2d 567 (2003). The dead child in this case was Carl Koehler, through whom Ernest Umble seeks to inherit as a paternal relative. Bierkle contends that Carl Cedrick Umble neglected Carl Koehler in the manner described in Subsection 2114(4).

Our analysis must begin with an overview of the statute as a whole, as we "do[] not construe the meaning of statutory terms in a vacuum." *Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008) (quotation marks and citation omitted). MCL 700.2114 states in relevant part:

> (1) Except as provided in subsections (2), (3), and (4), for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status. . . .

* * *

(2) An adopted individual is the child of his or her adoptive parent or parents and not of his or her natural parents, but adoption of a child by the spouse of either natural parent has no effect on either the relationship between the child and that natural parent or the right of the child or a descendant of the child to inherit from or through the other natural parent. An individual is considered to be adopted for purposes of this subsection when a court of competent jurisdiction enters an interlocutory decree of adoption that is not vacated or reversed.

(3) The permanent termination of parental rights of a minor child by an order of a court of competent jurisdiction; by a release for purposes of adoption given by the parent, but not a guardian, to the family independence agency or a licensed child placement agency, or before a probate or juvenile court; or by any other process recognized by the law governing the parent-child status at the time of termination, excepting termination by emancipation or death, ends kinship between the parent whose rights are so terminated and the child for purposes of intestate succession by that parent from or through that child.

(4) Inheritance from or through a child by either natural parent or his or her kindred is precluded unless that natural parent has openly treated the child as his or hers, and has not refused to support the child.

(5) Only the individual presumed to be the natural parent of a child under subsection (1)(a) may disprove a presumption that is relevant to that parent and child relationship, and this exclusive right to disprove the presumption terminates on the death of the presumed parent.

Subsection (1) sets forth the general rule that "an individual is the child of his or her natural parents, regardless of their marital status." Notably, Subsection (1)(b)(*v*) allows a court to find a parent-child relationship "[r]egardless of . . . whether or not the alleged father has died . . . ." The Reporter for the EPIC draft-

ing committee of the State Bar of Michigan has noted, "It is important to read and understand that subsection (1) expresses the operative rule of this entire section." Martin & Harder, Estates and Protected Individuals Code With Reporters' Commentary (ICLE, Feb 2015 update), p 65.[2] Subsection (1) dictates that a parent-child relationship existed between Carl Cedrick Umble and Carl Koehler, despite that Carl Koehler was a posthumous, nonmarital child.

Subsections (2), (3), and (4) describe three situations in which a proven parent-child relationship can be overcome, defeating intestate inheritance despite a demonstrated parent and child relationship. Subsection (2) provides that an adopted child "is the child of his or her adoptive parents," and not of his or her natural parents. Subsection (3) states that "[t]he permanent termination of parental rights" severs the parent-child relationship for the purposes of intestate succession. And Subsection (4) declares that "[i]nheritance from or through a child by either natural parent or his or her kindred is precluded unless that natural parent has openly treated the child as his or hers, and has not refused to support the child." These three subsections "are the exceptions to the operative rule." Martin & Harder, p 65.[3]

---

[2] The Reporter highlighted that Subsection (1)(b)(*v*) "offers an additional avenue for establishing paternity when mutual acknowledgment under Subsection (1)(b)(*iii*) is unavailable. *This could be important if the child is born after the death of the father* or is an infant when the father dies." Martin & Harder, p 65 (emphasis added).

[3] One of the exceptions reinforces that for the purpose of intestate succession, posthumous children must be treated in the same manner as children born during the lifetimes of their parents. Subsection (3) indicates that while the permanent termination of parental rights and other court-recognized releases of parental rights operate to "end[] kinship," "termination by emancipation or death" does not. MCL 700.2114(3).

Because Subsection (4) is an exception to the "operative rule" of intestate succession, it is akin to an affirmative defense. An affirmative defense "is a matter that accepts the plaintiff's allegation as true and even admits the establishment of the plaintiff's prima facie case, but that denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993), citing 2 Martin, Dean & Webster, Michigan Court Rules Practice, p 192. In the context of MCL 700.2114, once the parent-child relationship is proven in a manner consistent with Subsection (1), the gateway to intestate inheritance is open; alternatively stated, the prima facie case for inheritance is established. An heir may challenge an individual's right to inherit based on a demonstrated parent-child relationship by invoking one of the exceptions. As with any affirmative defense, the party asserting that the exception controls the outcome bears the burden of presenting evidence to support his or her claim. See *Attorney General ex rel Dep't of Environmental Quality v Bulk Petroleum Corp*, 276 Mich App 654, 664-665; 741 NW2d 857 (2007). We agree with the probate court that Bierkle shirked this burden.

The plain language of the exception at issue here requires proof of two facts: that the natural parent failed to "openly treat[] the child as his," *and* that the natural parent "refused to support the child." MCL 700.2114(4) (emphasis added). Thus, in crafting Subsection (4), the Legislature decreed that two separate and distinct conditions must be fulfilled before a court may foreclose a parent's right to intestate inheritance from a child. The Legislature's use of the word "and" demonstrates that proof of *both* conditions is required. "Plainly, the use of the conjunctive term 'and' reflects

that *both* requirements must be met . . . ." *Karaczewski
v Farbman Stein & Co*, 478 Mich 28, 33; 732 NW2d 56
(2007), overruled in part on other grounds *Bezeau v
Palace Sports & Entertainment, Inc*, 487 Mich 455; 795
NW2d 797 (2010). "[T]he words ['and' and 'or'] are not
interchangeable and their strict meaning should be
followed when their accurate reading does not render
the sense dubious and there is no clear legislative
intent to have the words or clauses read in the con-
junctive." *Auto-Owners Ins Co v Stenberg Bros, Inc*,
227 Mich App 45, 50-51; 575 NW2d 79 (1997) (quota-
tion marks and citation omitted). The Legislature
intended a dual showing of parental malfeasance be-
fore an intestate inheritance may be precluded: both
economic *and* emotional malevolence. *Turpening* sup-
ports this view: "[T]he statute's meaning is clear that a
natural parent is barred from inheriting except if the
natural parent 'openly treated the child as his' *and* 'has
not refused to support the child.' " *Turpening*, 258 Mich
App at 468 (citation omitted).

No evidence suggests that Carl Cedrick Umble "re-
fused" to support Carl Koehler. As this Court noted in
*Turpening*, 258 Mich App at 467, a "refusal" reflects
"an act of the will." (Quotation marks and citation
omitted.) Carl Cedrick Umble died before Carl Koehler
was born. He could hardly have "refused" to support a
child he never met. That Carl Cedrick Umble never
*actually* "supported" Carl Koehler is simply irrelevant;
were that the test, Subsection (4) would jeopardize
inheritance rights flowing from most posthumous chil-
dren.[4] The statute requires that Carl Cedrick Umble

---

[4] The dissent asserts that to be entitled to inherit through the estate
of a deceased child, a parent must always affirmatively prove that he or
she acknowledged the child and did not fail to support the child before
the child's death. We do not read the statute in this fashion. We further
observe that in the case of a posthumous child, such proofs are likely

"refused" to support his child. And Bierkle bore the burden of establishing such a refusal, as she moved for summary disposition under MCR 2.116(C)(8) on this issue.[5]

V

More fundamentally, we agree with the probate court that the Legislature never intended that Subsection (4) would apply to a posthumous child.

MCL 700.2114(4) is based on the 1990 version of the Uniform Probate Code (UPC), § 2-114(c). The prior UPC's language was almost identical to EPIC's:

> Inheritance from or through a child by either natural parent or his [or her] kindred is precluded unless that natural parent has openly treated the child as his [or hers], and has not refused to support the child. [Brackets in original.][6]

The comment to this section of the UPC stated, "The phrase 'has not refused to support the child' refers to the time period during which the parent has a legal obligation to support the child." UPC § 2-114(c), Comment (1990). Obviously, Carl Cedrick Umble never had a "legal obligation" to support Carl Koehler. The UPC aside, we reach the same conclusion based on the language and structure of EPIC.

---

impossible. Counsel in this case conceded at oral argument that they presented all the evidence that was available. A remand, advocated by the dissent, would be a meaningless exercise.

[5] "In a contested proceeding, pretrial motions are governed by the rules that are applicable in civil actions in circuit court." MCR 5.142. As a matter of procedure, Bierkle had to come forward with proof, as she was the moving party, that the predeceased natural father failed to acknowledge and refused to provide support for the unborn child at the time of the father's death.

[6] When the UPC was amended in 2008, the drafters omitted Subsection (c).

A central purpose of MCL 700.2114 is to abrogate the common-law rule that denied nonmarital children any right to inherit from their biological fathers. The first sentence of § 2114(1) provides that with three exceptions, "for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, *regardless of their marital status*." (Emphasis added.) This subsection of EPIC proclaims that nonmarital children may inherit through intestacy, assuming parentage has been satisfactorily established.

At the outset of EPIC's provisions regarding intestate succession, posthumous children are included as potential heirs. MCL 700.2114(1)(a) provides that a child "conceived" during a marriage is presumed to be the child of both natural parents. And since marital and nonmarital children are treated alike, the rule that the parent-child relationship controls intestate inheritance applies equally to both posthumous and nonmarital children. EPIC also recognizes the rights of posthumous children in MCL 700.2108 ("An individual in gestation at a particular time is treated as living at that time if the individual lives 120 hours or more after birth."). And that Ernest Umble was Carl Koehler's half-brother is of no moment, as "[a] relative of the half blood inherits the same share he or she would inherit if he or she were of the whole blood." MCL 700.2107.

In determining whether MCL 700.2114(4) applies to posthumous children, our job is "to construe statutes, not isolated provisions." *Graham Co Soil & Water Conservation Dist v United States ex rel Wilson*, 559 US 280, 290; 130 S Ct 1396; 176 L Ed 2d 225 (2010) (quotation marks and citation omitted). "[T]o discern the Legislature's intent, statutory provisions are *not* to be read in isolation; rather context matters, and thus

statutory provisions are to be read as a whole." *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010).

EPIC provides a discrete mechanism for a nonmarital child born after his father's death to obtain a judicial determination of paternity for inheritance purposes. Given this right to *establish* paternity despite a father's untimely demise, it makes little sense to construe EPIC as creating a virtually impenetrable barrier to the flip side—inheritance by the paternal family through the posthumous child. A father who dies before his child is born is incapable of "treating the child as his." Despite a father's death, the father's family may nevertheless have treated the child as "theirs," serving as an important emotional and financial support system for the child and mother. Evidence of a deceased parent's attitude toward an unborn child is unlikely to exist when the child's birth occurred many years before the emergence of the heirship dispute, or when the parent died in the early stages of a pregnancy. Lengthy investigations of long-forgotten parental intent contravene another central purpose of EPIC: "[t]o promote a speedy and efficient system for liquidating a decedent's estate and making distribution to the decedent's successors." MCL 700.1201(c).[7]

---

[7] Although they are interesting, the two cases cited by the dissent lack any relevance here. *In re Estate of Poole*, 328 Ill App 3d 964; 767 NE2d 855 (2002), involved the construction of an intestacy scheme markedly different from EPIC. Under 755 Ill Comp Stat 5/2-2, the application of other Illinois statutes governing intestate succession from or through a child born out of wedlock depends on whether "both parents are eligible parents." 755 Ill Comp Stat 5/2-2 defines an "eligible parent" as "a parent of the decedent who, during the decedent's lifetime, acknowledged the decedent as the parent's child, established a parental relationship with the decedent, and supported the decedent as the parent's child." By defining an "eligible parent" in this fashion, Illinois specifically preconditions a parent's ability to inherit on parental support and acknowledgment.

That posthumous children may inherit under Michigan's law of intestate succession reflects our Legislature's belief that consanguinity—biology—generally dictates inheritance rights. The exceptions to this principle are narrowly drawn to exclude parents who have lost their parental rights through adoption or other court order, or parents who *could* have lost their parental rights because they ignored and economically neglected their child. Bierkle's construction of MCL 700.2114(4) would defeat the purposes of MCL 700.2114 by forcing the descendants of a posthumous child to prove that the parent would have acknowledged and supported the child had the parent survived. The policy underlying Subsection (4) is to prevent undeserving parents from inheriting, see *Turpening*, 258 Mich App 464, not to erect evidentiary burdens and barriers constraining intestate succession when a relative of a parent seeks to inherit through a dead child's estate.

Applying Subsection (4) to a nonmarital, posthumous child contradicts the central thrust of other intestacy provisions of EPIC. Accordingly, the probate court properly refused to subvert clearly declared legislative purposes by refusing to apply MCL 700.2114(4) to the facts of this case.

We affirm.

SHAPIRO, P.J., concurred with GLEICHER, J.

---

The Mississippi statute at issue in *Williams v Farmer*, 876 So 2d 300 (Miss, 2004), similarly differs from EPIC. In Mississippi, "the natural father of an illegitimate and his kindred shall not inherit . . . [f]rom or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child, and are precluded from inheriting wealth through the child's natural mother. Miss Code Ann § 91-1-15(2)." Unlike EPIC, both the Mississippi and Illinois statutes specifically declare that the acknowledgment and support obligations are prerequisites to a parental claimant's prima facie proofs.

O'CONNELL, J. (*dissenting*). I respectfully dissent. Because MCL 700.3407(1)(a) places the burden on the petitioner to prove heirship, and appellee Ernest Lee Umble is attempting to establish heirship, he has the burden to prove his status as an heir. Accordingly, I would place the burden to establish heirship on Umble, and I believe the proper analysis of this case is as follows:

In 1931, Carl Cedrick Umble, the paternal grandfather of decedent, Kenneth James Koehler, died in a knife fight that began after Clyde Shadwick approached Carl Umble as he and Florence Koehler, who was then pregnant with Carl Umble's child, were kissing. At that time, Carl Umble was married to Lyndall Hackett, with whom he had a legitimate child. He could not have known that his decisions would seriously complicate the administration of his grandson's estate.

Appellant, Sherry Bierkle, appeals by delayed leave granted the probate court's order granting summary disposition in favor of appellee, Ernest Lee Umble. Bierkle raises two issues on appeal. First, the probate court ruled that Umble is a paternal heir to Kenneth Koehler under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* Bierkle contends that the trial court erred. I disagree and conclude that the trial court correctly found that Umble is a paternal relative under EPIC.

Second, Bierkle contends that the trial court incorrectly decided that MCL 700.2114(4), which precludes a natural parent from inheriting from a child whom the parent failed to acknowledge or refused to support, cannot apply to a case in which a parent predeceased the child. I agree and conclude that MCL 700.2114(4) can apply, and I further conclude that unresolved

factual issues exist regarding whether Carl Umble acknowledged or refused to support Carl Koehler. I would reverse and remand for further proceedings consistent with this opinion.

### I. FACTUAL BACKGROUND

In February 2012, Kenneth Koehler died intestate with a distributable estate of about $500,000. Kenneth Koehler had no children or siblings, and his parents predeceased him. On July 8, 2013, Sherry Bierkle, Kenneth Koehler's maternal cousin, filed a final accounting and a proposed settlement of Kenneth Koehler's estate among his maternal relatives. On July 23, 2013, Ernest Umble objected to Bierkle's proposed settlement. Ernest Umble asserted that he was Kenneth Koehler's paternal uncle. The family tree is as follows:

A news article from February 8, 1931, provides the context for Carl Umble's death. Carl Umble had been "separated for several months from his wife, Mrs. Lydia Hackett Umble . . . ." Florence Koehler and Carl Umble quarreled and he "failed to revive the girl's affection for him," but he was "reported to have threatened violence to anyone who went out with [Koehler] . . . ." Clyde Shadwick, who admitted to stabbing

Carl Umble, stated that he was "knocked down by a blow of Umble's fist" after he approached Umble and Florence Koehler as Umble "started to kiss her . . . ." Carl Koehler was born about three months later, and his Colorado birth certificate listed Carl Umble as his father.

Bierkle filed a proposed settlement of Kenneth Koehler's estate among his maternal relatives. Shortly afterward, Ernest Umble filed objections, asserting that Kenneth Koehler's paternal relatives[1] were entitled to half of the estate. Bierkle filed for summary disposition, asserting that even if Carl Umble was Carl Koehler's natural father, Ernest Umble could not be an heir to Kenneth Koehler's estate at law. According to Bierkle, Carl Umble was barred from inheriting as a matter of law because MCL 700.2114(4) provides that a parent may not inherit through a child whom the parent did not acknowledge or failed to support. According to Bierkle, it is impossible for a predeceased parent to establish that he or she acknowledged or supported an afterborn child.

Ernest Umble responded that the probate court should grant summary disposition in his favor under MCR 2.116(I)(2) because MCL 700.2114(4) does not apply if the parent predeceased the birth of the child. According to Ernest Umble, this subsection conflicts with other provisions of EPIC. Following a hearing, the probate court granted summary disposition in favor of Ernest Umble. It reasoned that applying MCL 700.2114(4) to cases in which a child predeceased the parent would conflict with other sections of EPIC.

The probate court held a bench trial to determine whether Carl Umble was the natural father of Carl

---

[1] Ernest Umble is the only surviving paternal relative.

Koehler. Following proofs by both parties, the probate court found that Carl Umble was Carl Koehler's father and was entitled to inherit through him. As a result, it sustained Ernest Umble's objections to the proposed settlement of Kenneth Koehler's estate and ruled that Kenneth Koehler's paternal relatives should inherit half of the estate.

Bierkle now appeals. The questions this Court must answer to resolve the issues presented are (1) whether Carl Umble was the father of Carl Koehler for the purposes of EPIC, and (2) whether MCL 700.2114(4) applies to cases involving afterborn children.

## II. STANDARDS OF REVIEW

This Court reviews for clear error the probate court's factual findings. *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). Its findings are clearly erroneous if this Court is definitely and firmly convinced that the probate court made a mistake. *Id*.

We review de novo issues of statutory interpretation. *In re Casey Estate*, 306 Mich App 252, 256; 856 NW2d 556 (2014). If the plain and ordinary meaning of a statute's language is clear, we will enforce the statute as written. *Id*. We must consider the statute as a whole and in context, giving every word meaning and avoiding constructions that render parts of the statute surplusage. *Id*. at 257. We should not write into a statute provisions that the Legislature did not include. *Id*.

We review de novo the probate court's decision on a motion for summary disposition. *Id*. at 256. "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the claim as pleaded . . . ." *Id*. The probate court properly grants summary disposition if the moving party is entitled to judgment as a matter of law.

MCR 2.116(C)(8). The probate court may grant summary disposition to the nonmoving party under MCR 2.116(I)(2) if "the opposing party, rather than the moving party, is entitled to judgment . . . ."

### III. BACKGROUND LAW

Bierkle asserts that the probate court clearly erred when it found that Carl Umble was the natural father of Carl Koehler. Whether Carl Umble was Carl Koehler's father for purposes of EPIC is important in this case because it determines whether Ernest Umble can inherit as a paternal descendant. If Carl Umble was entitled to inherit from his child, Carl Koehler, Ernest Umble is the only surviving descendant of Kenneth Koehler's paternal grandparents, and he is entitled to inherit half of Kenneth Koehler's estate. Otherwise, Bierkle and the other descendants of Kenneth Koehler's maternal grandparents will inherit the entire estate.

Article II, part 1 of EPIC governs the rights to an intestate inheritance. *In re Certified Question*, 493 Mich 70, 76-77; 825 NW2d 566 (2012). Some basic definitions are necessary to understand the order of inheritance. EPIC defines "descendant" as "in relation to an individual, all of his or her descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this act." MCL 700.1103(k). EPIC defines a "parent" as "an individual entitled to take, or who would be entitled to take, as a parent under this act by intestate succession from a child who dies without a will and whose relationship is in question." MCL 700.1106(i).

If a decedent dies intestate and has no surviving spouse, EPIC provides the order in which the decedent's estate will pass to his or her surviving relatives.

MCL 700.2103. First, the estate will pass to the decedent's descendants. MCL 700.2103(a). If the decedent has no descendants, the estate will pass to the decedent's surviving parent or parents. MCL 700.2103(b). If the decedent has neither descendants nor surviving parents, the estate will pass to the descendants of the decedent's parents (the decedent's siblings, nieces, and nephews). MCL 700.2103(c).

If the decedent has no surviving descendants, parents, or descendants of parents, EPIC instructs the probate court to determine whether there are any descendants of the decedent's grandparents. MCL 700.2103(d). Half of the decedent's estate passes to the decedent's paternal grandparents or their descendants, and half of the decedent's estate passes to the decedent's maternal grandparents or their descendants. MCL 700.2103(d). Finally, "[i]f there is no surviving grandparent or descendant of a grandparent on either the paternal or the maternal side, the entire estate passes to the decedent's relatives on the other side in the same manner as the ½." *Id.* The burden of establishing heirship is on the petitioner. MCL 700.3407(1)(a).[2]

Accordingly, if Carl Umble was entitled to inherit as Carl Koehler's parent, Ernest Umble is entitled to inherit half of Kenneth Koehler's estate because he is the sole surviving descendant of Kenneth Koehler's paternal grandparents. But if inheritance could not pass up to Carl Umble through his relationship with Carl Koehler, it cannot pass back down to Ernest Umble, and he is not entitled to a portion of the estate.

---

[2] Pre-EPIC caselaw required the child-petitioner to show that he or she and his or her parent mutually acknowledged their relationship. See *In re Scharenbroch Estate*, 191 Mich App 215, 216; 477 NW2d 436 (1991); *In re Jones Estate*, 207 Mich App 544, 548; 525 NW2d 493 (1994).

IV. ERNEST UMBLE'S RELATIONSHIP TO KENNETH KOEHLER

EPIC provides that, generally, a child is the child of his or her natural parents even if they were not married at the time of the child's birth:

> Except as provided in subsections (2), (3), and (4), for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status. [MCL 700.2114(1).]

MCL 700.2114(1)(b) sets forth circumstances in which a man is considered to be the natural parent of a child when that child is conceived out of wedlock. In this case, the probate court proceeded under MCL 700.2114(1)(b)(*v*). This subparagraph provides that:

> [r]egardless of the child's age or whether or not the alleged father has died, the court with jurisdiction over probate proceedings relating to the decedent's estate determines that the man is the child's father, using the standards and procedures established under the paternity act, . . . MCL 722.711 to 722.730.

Michigan's Paternity Act "was created as a procedural vehicle for determining the paternity of children born out of wedlock . . . ." *In re MKK*, 286 Mich App 546, 557; 781 NW2d 132 (2009) (quotation marks and citations omitted). The Paternity Act provides four ways by which a court may establish paternity and issue an order of filiation:

> (a) The finding of the court or the verdict determines that the man is the father.
>
> (b) The defendant acknowledges paternity either orally to the court or by filing with the court a written acknowledgment of paternity.
>
> (c) The defendant is served with summons and a default judgment is entered against him or her.

(d) Genetic testing . . . determines that the man is the father. [MCL 722.717(1).]

The party seeking to prove paternity must establish by a preponderance of the evidence that the man is the child's father. *Bowerman v MacDonald*, 431 Mich 1, 14; 427 NW2d 477 (1988).

This case did not involve a written acknowledgment of paternity, a default judgment, or genetic testing. Instead, the probate court relied on the documentary evidence that the parties presented at the bench trial. Bierkle specifically challenges the probate court's reliance on Carl Koehler's birth certificate, which listed Carl Umble as his father.

I agree with Bierkle that this birth certificate does not definitively establish that Carl Umble was Carl Koehler's father. But the statement on which Bierkle relies from the probate court's opinion is taken out of context. A full review of the probate court's opinion reveals that the probate court did not solely rely on the birth certificate. It was only part of the evidence the court considered.

In its findings, the probate court specifically noted that Carl Umble was killed in a knife fight over the affections of Florence Koehler, Carl Koehler's mother; a newspaper article and death certificate indicated that Carl Umble's mother was Grace Umble, and Carl Koehler's obituary listed his grandmother as Grace Roberts of Denver, Colorado; and Carl Koehler's marriage certificate listed his father as "Carl Sedric [sic] Umble." Given the body of evidence and the lack of evidence that Carl Koehler's father was someone else, I am not definitely and firmly convinced that the probate court made a mistake when it found that a preponderance of the evidence supported its finding that Carl Umble was Carl Koehler's father.

V. ACKNOWLEDGMENT AND SUPPORT

That Carl Umble was Carl Koehler's natural father does not automatically mean that he is entitled to inherit through Carl Koehler. Bierkle contends that the probate court erred when it determined that MCL 700.2114(4) cannot apply in circumstances where the parent dies before the child is born. Bierkle also contends that MCL 700.2114(4) bars Ernest Umble from inheriting as a matter of law because it is impossible for a natural parent to acknowledge or support an afterborn child. I agree in part. I conclude that the probate court erred when it concluded that MCL 700.2114(4) can only apply in cases involving living parents, but I conclude that it does not bar Ernest Umble from inheriting as a matter of law.

A. STATUTORY LANGUAGE

The probate court denied Bierkle's motion for summary disposition because it accepted Ernest Umble's argument that the exception in MCL 700.2114(4) could not apply in this case.

As previously noted, EPIC also provides "[e]*xcept as provided in subsections (2), (3), and (4)*, for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status." MCL 700.2114(1) (emphasis added). Subsection 4 provides:

> Inheritance from or through a child by either natural parent or his or her kindred is precluded unless that natural parent has openly treated the child as his or hers, and has not refused to support the child. [MCL 700.2114(4).]

To accept Ernest Umble's argument that MCL 700.2114(4) cannot apply in this case is to essentially

write an additional condition into MCL 700.2114(4), a clause that would read "unless the child is an afterborn child." This Court does not read clauses into unambiguous statutory language. *Casey Estate*, 306 Mich App at 257. However, the probate court accepted Ernest Umble's argument, concluding that MCL 700.2114(4) did not apply in such cases because it would be impossible for the predeceased parent to comply and other statutory sections allow for inheritance through predeceased parents. I conclude that the probate court erred when it decided that MCL 700.2114(4) does not apply to cases involving afterborn children.

If the language of the statute is unambiguous, we must enforce the statute as written. *Casey Estate*, 306 Mich App at 257. We should not read language into an unambiguous statute. *McCormick v Carrier*, 487 Mich 180, 209; 795 NW2d 517 (2010). A statute "is ambiguous only if it irreconcilably conflicts with another provision, . . . or when it is *equally* susceptible to more than a single meaning." *Mayor of Lansing v Pub Serv Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004) (quotation marks and citation omitted).

The probate court implicitly found that MCL 700.2114(4) is ambiguous when it reasoned that applying this subsection to cases involving afterborn children would conflict with other sections of EPIC. Specifically, the probate court cited MCL 700.2114(3), MCL 700.2104, MCL 700.2107, and MCL 700.2108 as conflicting provisions. I will analyze each of these statutory provisions in turn.

MCL 700.2114(3) provides that termination of parental rights precludes a parent from inheriting:

The permanent termination of parental rights of a minor child by an order of a court of competent jurisdic-

tion; . . . or by any other process recognized by the law governing the parent-child status at the time of termination, excepting termination by emancipation or death, ends kinship between the parent whose rights are so terminated and the child for purposes of intestate succession by that parent from or through that child.

By its plain language, MCL 700.2114(3) applies to actions terminating parental rights. While MCL 700.2114(3) recognizes that death does not terminate a parental relationship, this has no bearing on the operation of MCL 700.2114(4). MCL 700.2114(4) does not terminate the parental relationship by death; it precludes inheritance if the parent did not acknowledge or refused to support the child. Not only does this case not involve termination of parental rights or any law governing parent-child status *at the time of termination,* but even in a case that did, I am unable to determine any ways in which these sections irreconcilably conflict. I conclude that MCL 700.2114(3) does not conflict with MCL 700.2114(4).

MCL 700.2104 provides that "[a]n individual who fails to survive the decedent by 120 hours is considered to have predeceased the decedent for purposes of . . . intestate succession . . . ." This section concerns the death of the child, not the parent, and it does not touch on the parent-child relationship at all. This section would not irreconcilably conflict with MCL 700.2114(4) even if both the decedent and unborn child died within 120 hours of each other. I conclude that MCL 700.2104 and MCL 700.2114(4) do not conflict.

MCL 700.2107 provides that "[a] relative of the half blood inherits the same share he or she would inherit if he or she were of the whole blood." Nothing in MCL 700.2114(4) contradicts this section. MCL 700.2114(4) is only concerned with whether a natural father has acknowledged and has not refused to support a child.

That child's blood relationship to other children is not at issue. MCL 700.2107 and MCL 700.2114(4) do not conflict.

MCL 700.2108 provides that "[a]n individual in gestation at a particular time is treated as living at that time if the individual lives 120 hours or more after birth." Rather than conflicting, this actually supports the application of MCL 700.2114(4) in cases in which the natural parent predeceases the child. It instructs the probate court to treat an afterborn child as though the child was a living child at the time of the parent's death. This section does not conflict with MCL 700.2114(4), which does not, by its language, exclude afterborn children from consideration. I conclude that MCL 700.2108 and MCL 700.2114(4) do not conflict.

I conclude that the probate court erred by reading language into MCL 700.2114(4) that excludes afterborn children. This subsection is not ambiguous because it does not conflict with other provisions of EPIC. I recognize that applying MCL 700.2114(4) in cases involving afterborn children may be difficult. But that the statute appears to be inconvenient is not a reason for this Court to avoid applying plain statutory language. *Johnson v Recca*, 492 Mich 169, 187; 821 NW2d 520 (2012). Accordingly, I conclude that MCL 700.2114(4) applies in all cases of intestate succession from a child to a natural parent, not exclusive of afterborn children.

However, this does not mean that Bierkle is correct that Ernest Umble's claim is barred as a matter of law. Bierkle's argument is premised on the presumption that a natural father cannot acknowledge or support an afterborn child. I reject this presumption and conclude that the probate court did not err by denying Bierkle's motion for summary disposition.

As previously discussed, under MCL 700.2108, the probate court should consider a child who was in gestation at the time of a parent's death as a living child throughout the period of gestation if the child lives 120 hours or more after birth. I therefore conclude that under MCL 700.2114(4), the probate court must determine whether the predeceased natural father failed to acknowledge or refused to provide support to the unborn child at the time of the father's death. Accordingly, this issue cannot be resolved as a matter of law.

### B. PERSUASIVE AUTHORITY

Additionally, because this is an issue of first impression in Michigan, this Court may consider cases from other jurisdictions as persuasive. See *In re Turpening Estate*, 258 Mich App 464, 466; 671 NW2d 567 (2003). Other jurisdictions hold that a natural father can acknowledge and provide support for a child even if the child dies before its birth. While this factual scenario is not directly analogous to a case involving an afterborn child, the crux of the argument—that it is impossible for the natural parent to acknowledge and support the child—is the same in both factual scenarios.

In *In re Estate of Poole*, 328 Ill App 3d 964; 263 Ill Dec 129; 767 NE2d 855 (2002), the Appellate Court of Illinois considered whether the acknowledged biological father of a fetus that was stillborn could inherit through the child. In that case, the Appellate Court of Illinois for the Third District considered whether statutory language providing that a father could not inherit through an illegitimate child unless the father, during the child's lifetime, acknowledged the child, established a parental relationship with the child, and supported the child. *Id.* at 969. The maternal relatives

in *Poole* argued that the father was not eligible to inherit because the child did not have a lifetime and so the father could not acknowledge her, support her, or establish a relationship with her. *Id*. The court determined that the father could qualify as an eligible parent because he resided with the child's mother throughout the pregnancy, he provided financial and emotional support to the mother and through her to the unborn child, and he held himself out as the child's father. *Id*. at 970.

Similarly, in *Williams v Farmer*, 876 So 2d 300; 2002 CA 02094 SCT (Miss, 2004), the Mississippi Supreme Court considered a statute providing that a father could not inherit through an illegitimate child unless the father openly treated the child as his own and had not refused or neglected to support the child. The father in *Williams* argued that this statute did not apply when his unborn child died in a car accident because it was impossible for him to comply with the statutory requirements. *Id*. at 302-303; 304-305. The court found that the statute did apply because the father could have acknowledged the fetus and provided support for it during the pregnancy. *Id*. at 305. The court barred the father from inheritance because he had no contact with the child's mother while she was pregnant, and "did not contribute any support, financial or otherwise" to the mother during or after the pregnancy. *Id*. at 306.

I find these cases persuasive. They establish that, in other states with similar statutes, courts have found that it is not *impossible* for a natural father to acknowledge and support an unborn child.

### C. APPLICATION

In this case, the proofs are complicated by the passage of time. Carl Umble died in 1931. However,

circumstantial evidence and inferences from the evidence may support the probate court's findings. See *Kupkowski v Avis Ford, Inc*, 395 Mich 155, 166; 235 NW2d 324 (1975) (holding that circumstantial evidence and reasonable inferences may be sufficient to establish a fact).

Considering acknowledgment, the present state of the law in Colorado is that a father must consent to be named a father on a child's birth certificate. See Colo Rev Stat 19-4-105(1)(c)(II). There is no evidence regarding the state of the law in Colorado at the time of Carl Koehler's birth, but if similar laws existed, the fact that Carl Umble is listed on Carl Koehler's birth certificate might provide evidence of acknowledgment. If the child was acknowledged in Carl Umble's obituary, that too may be additional evidence.

I also note that there are many ways in which a father can support a child. See *Turpening Estate*, 258 Mich App at 468. The language of MCL 700.2114(4) states that the subsection applies if the parent *refused* to support the child. There must be some evidence that a natural parent refused to support his or her child. For instance, if another relative asked the natural father to support the child's mother but the father denied that the child was his, this may be evidence of refusing to support the child. See *Turpening Estate*, 258 Mich App at 468. Similarly, a natural father's lack of involvement in a pregnancy of which he was aware could provide circumstantial evidence to support an inference that the father refused to support the child. In contrast, if a natural father supported the unborn child by supporting its mother through the pregnancy or made provisions for familial support, this may be evidence that the predeceased father did in fact support the child. I note that a newspaper article provides

evidence that Carl Umble was involved in an ongoing relationship with Florence Koehler until his death, to the point of striking a man who approached them during a kiss and getting into a fatal knife fight. I do not decide whether the evidence is sufficient to support an inference or finding on this point—I simply note that evidence may exist.

Because the probate court determined that MCL 700.2114(4) did not apply in this case, it did not receive evidence on either of these requirements. I would remand for additional proceedings.

### VI. CONCLUSION

It may be difficult for the predeceased natural father of a child born out of wedlock to comply with MCL 700.2114(4), but the statute is not ambiguous, and the proofs are not impossible. MCL 700.2114(4) applies in cases involving the predeceased natural fathers of afterborn children. In such cases, the probate court must determine (1) whether the man was the child's natural father, (2) whether the father acknowledged the unborn child, and (3) whether the father refused to support the unborn child.

I would reverse the probate court's determination that MCL 700.2114(4) did not apply in this case and remand for further proceedings.